ROY *v.* BENNETT.

256 S. W. 2d 39

Opinion delivered March 23, 1953.

*Norton & Norton,* for appellant.

*Harold Sharpe,* for appellee.

J. SEABORN HOLT, J.   This litigation involved the distribution (and apportionment) of funds approximating $3,287.86 of the Bennett Drug Store, now remaining in the registry of the court, following a receivership.   The

record shows that on June 26, 1950, appellee, Bennett, and W. J. Roy and his son, Dr. J. M. Roy, entered into a partnership, evidenced by the following Bills of Sale: "By James T. Edgar to Paul Bennett, June 26th, 1950, for $30,000 cash in hand paid, the merchandise, fixtures, accounts, etc., of Jim Edgar's Drug Store; and on the same day, by Paul G. Bennett to W. J. Roy and J. Max Roy, for $15,000 cash in hand paid, 'an undivided one-half interest in and to' the same personal property."

Mr. J. W. Roy died intestate July 4, 1951, and thereafter appellant, Mrs. Roy (his widow) acquired her son's one-fourth interest, succeeded to the interest of her husband, J. W. Roy, and the business was thereafter continued in Forrest City, Arkansas, as a partnership between her and Bennett on a 50-50 basis, without any change.

On petition of Mrs. Roy, on November 2, 1951, a manager was by agreement placed in charge of the business and on November 24, 1951, on petition of Mrs. Roy and her son, Dr. Roy, as administrator for his father's estate, a receiver was appointed for the Bennett Drug Store, and by proper procedure, its property was sold to appellant for $32,500.

Just what is the interest of Mrs. Roy and that of Bennett in this money in the liquidation of the partnership is the primary question here.

It is undisputed that Mr. Roy and his son, Dr. Roy, put $15,000 in cash into the partnership at its inception by borrowing this amount from a bank (evidenced by their personal note) and that Bennett put in a like amount, $15,000, $10,000 of which he borrowed from Mr. Klinke in Memphis, giving his personal note therefor, endorsed by Dr. Roy. The principal ($15,000) of the Roy note was repaid to the bank, but interest in the amount of $900 was paid out of partnership funds. Bennett's $10,000 note, with interest, to Klinke was fully paid in installments from *partnership funds*.

Mrs. Roy, appellant, earnestly contended below, and argues here, that she and Bennett, under the recitals in

the above Bills of Sale and the evidence, were equal partners and each was to share in all profits and losses on a 50-50 basis, and that in the final distribution of assets, each should bear the losses only on this basis, and that the trial court erred in charging to Mrs. Roy 58.42% (based on her capital investment) of the losses and 41.58% to Bennett (based on his capital investment). We think the preponderance of the testimony supports appellant's contention.

Appellee, Bennett, contended for a 50-50 sharing of all assets after debts were paid on the ground that it was agreed that what each had borrowed to put into the business was to be repaid out of earnings, if any, and that each would share not only 50-50 in the losses but equally in the assets remaining after all debts were paid. He says: "That as the owner of a 50% interest in the partnership drug store, he is entitled to one-half of the funds on hand after the payment of all debts."

Mr. Bennett testified: "Q. On the note is your signature and that of Dr. Roy. It was your understanding that the money from the drug store was to have been paid on the Klinke indebtedness? A. That the money is to be refunded to me and the $900 interest paid to the Bank of Eastern Arkansas for the money they borrowed. Q. The $900 interest to the Bank was ultimately to be shouldered by the drug store, and the $5,000 to you and the $10,000 to Klinke? A. When the $15,000 was paid to the Bank, then I would get my $5,000. Q. The drug store was to pay the actual cost of it out of the profits. A. Dr. Roy understood about the $10,000."

It is undisputed, however, as indicated, that the business produced no profits, but only losses, that Mrs. Roy, with proceeds from her husband's life insurance, personally paid the $15,000 note to the bank and that only $900 interest on this note was paid from partnership funds (optimistically it would appear). It also appears undisputed that the $10,000 note of Bennett (principal and interest) and $110 for a vacuum cleaner were paid from partnership funds, and not by him personally.

In the circumstances, Bennett should be held personally liable to the partnership for his $10,000 note (principal and interest) and the vacuum cleaner which were paid out of partnership funds just as Mrs. Roy should be and was charged with the $900 interest payment above. The remaining undistributed assets, after court costs have been paid, should then be paid on the basis of 50% thereof to Mrs. Roy and 50% to Bennett.

The decree is reversed and the cause remanded for further proceedings consistent with this opinion.